Filed 12/1/14  P. v. Likens CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C074608 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF13232) |
| v. | |
| DONALD HARTER LIKENS, | |
| Defendant and Appellant. | |

A jury convicted defendant Donald Harter Likens of felony evading (Veh. Code, § 2800.2, subd. (a); count 1; unless otherwise stated, statutory references that follow are to the Vehicle Code) and driving or taking a vehicle with intent to deprive the owner of possession with a prior conviction for the same (§ 10851, subd. (e); count 2) and found that he had served three prior prison terms (Pen. Code, § 667.5, subd. (b)).  The court sentenced defendant to state prison for an aggregate term of seven years eight months.

Defendant appeals.  He contends (1) insufficient evidence supports his conviction on count 2 in that the evidence fails to show that he took the car without permission and intended to deprive the owner of possession, (2) the trial court erroneously admitted

1

evidence of two prior convictions for felony evading under Evidence Code sections 1101, subdivision (b) and 352, and (3) the trial court erred in instructing the jury to continue to deliberate after it had returned verdicts on the lesser included offenses. We affirm the judgment.

FACTS AND PROCEEDINGS

About 6:00 p.m. on April 13, 2013 in Linda, California, Deputy Sheriff Henry Abe saw a Honda Prelude that recently had been reported stolen from Yuba City. Abe followed the Honda and confirmed with the dispatcher that the vehicle was stolen. At one point, Abe was in his patrol car behind the Honda at a light. When the light turned green, the Honda turned left in front of Deputy Sean Moore's patrol car. Moore saw the face of the driver of the stolen car for 10 to 30 seconds and described the driver as a white male adult between 20 and 30 years of age, with a mustache and dark hair, wearing a white baseball cap turned backwards. Moore identified defendant as the driver.

After defendant turned left, Abe followed him and turned on his overhead lights. Defendant did not yield and Abe then turned on his siren. Defendant accelerated and lost traction, sliding between lanes. Both deputies pursued defendant who violated the speed law (65 in a 35-mile-per-hour zone) and crossed over a double yellow line into oncoming traffic.

Defendant eventually turned onto Shad Road which led to a levee. Defendant turned onto a dirt road along the levee, causing a lot of dust which required the deputies to slow down to avoid pedestrians. As a result, the deputies lost sight of the stolen car. When the deputies found the car, defendant had fled on foot, leaving the driver's door open. The steering column of the stolen car had been damaged as had the ignition. There was a Master or padlock key wrapped with electrical tape hanging next to the ignition. In the stolen car, deputies found a cell phone with photos of defendant with a white baseball cap turned backwards.

The stolen car belonged to Cesar Ordaz although it was registered to his father. Ordaz had reported the car stolen and he reclaimed the car.

Defendant had previously been convicted of vehicle theft.

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant contends insufficient evidence supports his conviction on count 2 in that the evidence fails to show that he took the car without permission and intended to deprive the owner of possession.

" 'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Tafoya* (2007) 42 Cal.4th 147, 170.) " 'The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.]' " (*People v. Snow* (2003) 30 Cal.4th 43, 66.)

To prove a violation of section 10851, subdivision (e) the prosecutor had to show beyond a reasonable doubt that defendant took or drove Ordaz's car without his consent and with the specific intent to deprive him either permanently or temporarily of his title to, or possession of, the vehicle, and, as applicable here, that defendant had previously been convicted of violating section 10851, subdivision (a). (§ 10851, subd. (e); CALCRIM No. 1820A.)

The evidence here showed that, even though registered to Ordaz's father, the stolen car belonged to Ordaz who had recently reported it stolen from Yuba City. That alone strongly suggests that defendant did not have permission to drive the car. When defendant was seen driving the stolen car in Linda, he fled when the deputy turned on his

3

lights and siren. Defendant had not committed any Vehicle Code violations up to that point. Defendant abandoned the stolen car and fled on foot. Ordaz reclaimed the car. The steering column and ignition were damaged and a padlock key was found hanging from the ignition. Thus, circumstantial evidence shows that defendant drove the car without consent and had the specific intent to deprive the owner of possession. There was no evidence of actual consent or that defendant held a good faith belief that Ordaz had given him permission to drive the car. Sufficient evidence supports defendant's conviction on count 2.

II

*Evidence of Prior Convictions*

Defendant next contends that the trial court erroneously admitted evidence of two prior convictions for felony evading under Evidence Code sections 1101, subdivision (b) and 352.

Since defendant challenges the trial court's pretrial ruling, the following facts are taken from the prosecution's offer of proof in its written motion in limine.

In December 2007, a deputy sheriff saw a 1987 Toyota Celica without a license plate being driven on Garden Avenue, north of Feather River Boulevard. When the deputy attempted to stop the car, the driver, later identified as defendant, turned into a trailer park, drove through the park, and stopped. When the deputy got out of his patrol car, defendant drove away at more than 70 miles per hour through a 25-mile-per-hour zone. At the end of Garden Avenue, defendant attempted to drive up "the face of the levee" but did not reach the top and the car slid down. Defendant got out and ran away but was caught by a police dog on the Yuba side of the levee. Defendant was convicted of violating section 2800.2, subdivision (a).

In April 2011, a California Highway Patrol (CHP) officer saw defendant driving a stolen 1993 Mercury Tracer on North Beale Road. The officer tried to stop defendant but

4

he fled, driving at 60 miles per hour through a gas station parking lot, between buildings, and through a field towards the levee.  Defendant's car became airborne when he crested the levee.  He continued on the levee for 200 yards and then onto another road where he stopped, got out and then fled on foot back towards the levee.  Defendant was eventually found and later was convicted of violating section 2800.2, subdivision (a).

The prosecution moved to admit the foregoing evidence to prove identity, intent, and common plan or scheme.  The People argued that the priors and the current charge had substantial and distinctive similarities in that all offenses "involve late model vehicles [current case involved a 1989 vehicle] in the area of Yuba County known as Linda" which are driven "recklessly from Linda's residential areas into the levee areas where the Defendant bails from the vehicle and attempts to flee on foot."  While defendant was able to flee successfully on foot in the current case, he was "not so lucky in previous cases."

Defense counsel objected to the admission of the prior evidence under Evidence Code section 1101, subdivision (b) to show identity, intent and common plan, and under Evidence Code section 352 arguing that "it is the sort of thing that 1101 is written to prevent . . . especially where it shows to prove [*sic*] identity and in some cases or some extent to prove intent" which "takes the burden off the People and allows the jury to make a decision just based on the fact that he has these two prior convictions."  Defense counsel argued common plan did not apply, noting that in the current case the driver escaped.

The trial court ruled the prior crimes evidence was admissible, finding the priors were probative of defendant's intent but not of his identity or common plan.

At trial, the prosecution presented the testimony of the deputy involved in the 2007 case and the CHP officer involved in the 2011 case.

5

In discussing instructions, the court reconsidered its pretrial ruling and allowed the evidence to show not only intent but also common plan. The evidence was limited to the evading charge.

Evidence Code section 1101 prohibits the admission of other crimes evidence to show a defendant's bad character or disposition to commit the crime charged except when relevant to prove some fact such as intent, absence of mistake or accident, and common plan. (*Id.* at subds. (a) & (b).) "To be relevant, an uncharged offense must tend logically, naturally and by reasonable inference to prove the issue(s) on which it is offered." (*People v. Robbins* (1988) 45 Cal.3d 867, 879.) "The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect." (*People v. Daniels* (1991) 52 Cal.3d 815, 856.) " ' "We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352." [Citation.]' [Citation.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667-668.)

*People v. Ewoldt* (1994) 7 Cal.4th 380 (*Ewoldt*) stated: "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act. . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]

"A greater degree of similarity is required in order to prove the existence of a common design or plan. As noted above, in establishing a common design or plan, evidence of uncharged misconduct must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to

6

be explained as caused by a general plan of which they are the individual manifestations.' [Citation.] '[T]he difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity.' [Citations.]

"To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*Ewoldt, supra,* 7 Cal.4th at pp. 402-403; see also *People v. Thomas* (2011) 52 Cal.4th 336, 355.)

Defendant contends the trial court abused its discretion in admitting the evidence to show intent and common plan and that the admission of the prior crimes evidence prejudiced him by permitting the jury to conclude he had a propensity to evade. Defendant argues that the evidence underlying the current charge "clearly established that the driver of the [Honda] Prelude intended to evade police and did not do so by accident or mistake or for any other reason" and the only question was the "identity of the driver."

Defendant argues his "flight [in all three cases] was evidence of a spontaneous act in response to being chased by police" which failed to show a common plan. In arguing his conduct showed nothing more than a spontaneous act, defendant relies upon *People v. Scheer* (1998) 68 Cal.App.4th 1009 (*Scheer*). In *Scheer,* the defendant caused an accident resulting in the death of a passenger in another car and then ran away. (*Id.* at p. 1015.) In a prior instance, the defendant failed to stop at a light and then ran from pursuing officers and in the process, committed several Vehicle Code violations. (*Id.* at p. 1017.) *Scheer* concluded the prior was inadmissible to show a common plan, finding the defendant's conduct in both instances was nothing more than a "spur-of-the-moment response." (*Id.* at p. 1021.)

7

*Scheer* is inapplicable here. Defendant's conduct of fleeing to the levee in order to abandon the stolen vehicle and then flee on foot was similar in all three instances and showed a premeditated contingency plan in case law enforcement found him driving a stolen car.

The probative value of the evidence of defendant's prior convictions was not "substantially outweighed by the probability that its admission [would] (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Evidence that defendant was previously convicted of felony evading was highly probative of his common plan to evade and was not more inflammatory than the charged offense of felony evading; they were about all the same. The prior convictions in 2007 and 2011 were not remote. The prior evidence, which was introduced through the deputy and CHP officer did not consume a significant amount of time. The court instructed the jury on the limited use of the evidence and that it was not to be used as propensity evidence. We presume the jury understood and followed the instruction. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Defendant has failed to demonstrate that the trial court abused its discretion in admitting the prior crimes evidence to show common plan. Although prior crimes evidence is relevant to show intent in a case where intent is seriously at issue, intent was not seriously at issue in the present case where defendant denied he was the perpetrator of the crime. As defendant argues, the driver obviously intended to evade the police; that fact is undisputed. Nonetheless, any error was clearly harmless because the prior crimes evidence was admissible to show common plan.

Defendant claims for the first time on appeal that the admission of evidence of his prior convictions deprived him of his federal constitutional rights to due process and a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution. Defendant claims that the prior crimes evidence "was such compelling propensity evidence that [his] right to a fair trial was violated."

8

Defendant did not object on constitutional grounds in the trial court. "[R]ejection on the merits of a claim that the trial court erred on the issue actually before the court necessarily leads to rejection of the newly applied constitutional 'gloss' as well. No separate constitutional discussion is required in such cases, and we therefore provide none." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 990, fn. 5.) We reject defendant's due process/fair trial claim argument. The trial court did not err in admitting the evidence of a common scheme or plan.

III

*Jury Instructions*

Defendant finally contends that the trial court erroneously instructed the jury to continue to deliberate after it had returned verdicts on the lesser included offenses.

The trial court instructed the jury on the charged offenses of felony evading (CALCRIM No. 2181), driving or taking a vehicle having a prior conviction for vehicle theft (CALCRIM No. 1820A), the lesser included offenses of misdemeanor evading (CALCRIM No. 2182), and driving or taking without a prior conviction (CALCRIM No. 1820B). The trial court further instructed the jury in the language of CALCRIM No. 3517 as follows:

"If all of you find that the Defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the Defendant is guilty of that lesser crime. A defendant may not be convicted of both a greater and lesser crime for the same conduct. [¶] Now I will explain to you which charges are affected by this instruction. Misdemeanor evasion of a peace officer is a lesser-included crime of reckless evasion of a peace officer, which is charged in Count I. Unlawfully taking or driving a vehicle is a lesser-included crime of unlawfully taking [or driving] a vehicle with a prior conviction, which is charged in Count II. It is up to you to decide the order in which you consider each crime and the relevant evidence, and I can

9

accept the verdict of guilty of a lesser crime only if you have found the Defendant not guilty of the corresponding greater crime. You will receive verdict forms of 'guilty' and 'not guilty' for the greater crimes and also verdict forms of guilty and not guilty for the lesser crimes. Follow these directions before you give me any completed and signed final verdict forms. Return any unused verdict forms to me unsigned. If all of you agree the People have proved beyond a reasonable doubt Defendant is guilty of the greater crime, date and sign the verdict form for guilty of that crime. Do not complete or sign any other verdict form for that count. If all of you cannot agree whether the People have proved beyond a reasonable doubt that the Defendant is guilty of the greater crime, inform me only that you cannot reach an agreement and do not complete or sign any verdict form for that count. If all of you agree that the People have not proved beyond a reasonable doubt the Defendant is guilty of the greater crime and you also agree that the People have proved beyond a reasonable doubt that he is guilty of a lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for guilty of the lesser crime. If all of you agree the People have not proved beyond a reasonable doubt Defendant is guilty of the greater or lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for not guilty of the lesser crime. If all of you agree the People have not proved beyond a reasonable doubt that Defendant is guilty of the greater crime, but all of you cannot agree on the verdict for the lesser crime, complete and sign the verdict form for not guilty of the greater crime and inform me only that you cannot reach an agreement about the lesser crime."

The jury deliberated, informed the court it had reached a verdict, and handed the verdict forms to the bailiff. After an off-the-record discussion between the judge and the clerk, the court told the jury:

"Okay. The situation we have here is you haven't completed the forms as they are required to be completed, so what we need to do is I need to ask you to please go back into the jury room, complete the forms as required, and specifically I would direct your

10

attention again to the instruction dealing with how these forms are to be completed with respect to the various counts and the lesser-included offenses that are charged. The specific instruction that I'm referring to -- do you have the instructions or not?

"Okay. The specific instruction you need to pay attention to and re-review and read is 3517. That's toward the end of the packet. So if you could do that and make sure you go through all of those paragraphs because the forms have to be correctly filled out in order for me to accept the verdict."

The jury foreperson said, "Yes, sir," and the jury returned to the jury room. About 15 minutes later, the jury returned with its verdicts, convicting defendant on the charged offenses. When polled, each juror confirmed that the verdicts were his or her true and correct verdicts. The court ordered the verdicts recorded.

Prior to dismissing the jury, the court had an in-chambers discussion as follows: "We are in chambers in the People versus Likens matter. Counsel is present. Defendant is present. What I want to put on the record is simply that if you look at the verdict forms, and I'll allow counsel to look at them, and what happened in this case was the jury came back initially, when we first met, with guilties [*sic*] on the lesser -- on both lesser counts. They did not find 'not guilty' on the greater counts. So I sent them back to read and follow 3517 so they would fill out the forms properly. That is what the record will reflect I did. They have now delivered the verdicts as was read[. O]n the prior verdicts on the lessers[,] [t]hey have now written 'void' on them. And underneath the word 'void' on each of them are initials. And it says 'Juror Number 12.' So I will allow and invite counsel to make whatever record you want."

The People had no comment. Defense counsel did not object but stated that he found it "very odd that Juror Number 12, who is not the foreperson" was the juror who wrote "void" on the verdict forms of the lesser included offenses. Defense counsel asked the court for a copy and that the void forms be marked as exhibits and retained. The court and counsel returned to the courtroom and the court dismissed the jury.

11

Defendant contends that the trial court erred in ordering the jury to return to the jury room to continue deliberations after it had returned verdicts on the lesser included offenses.

Initially, the People argue that defendant's claim has been forfeited, citing the rule that the failure to object to the form of a verdict when the jury returns it forfeits the issue on appeal. (*People v. Jones* (2003) 29 Cal.4th 1229, 1259; *People v. Bolin* (1998) 18 Cal.4th 297, 330; *People v. Webster* (1991) 54 Cal.3d 411, 446-447.) We agree, but, in any event, on the merits, we find no error.

"[A] court may restrict a jury from *returning* a verdict on a lesser included offense before acquitting on a greater offense, but may not preclude it from *considering* lesser offenses during deliberations. [Citations.] Thus, a trial court should not tell the jury it must first unanimously acquit the defendant of the greater offense before deliberating on or even considering a lesser offense. [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 536; italics added.)

"[W]hen the jury returns a verdict on the lesser included offense, it must also render a corresponding verdict of acquittal on the greater offense. . . . If [the jury renders only a verdict of guilty on the lesser included offense], the trial court may properly decline to receive and record this verdict of conviction pending further deliberations by the jury. More specifically, prior to discharging the jury, the trial court has the authority pursuant to [Penal Code] section 1161 to direct the jury to reconsider its lone verdict of conviction on the lesser included offense in light of [*People v. Kurtzman* (1988) 46 Cal.3d 322, 329 (*Kurtzman*)] and the acquittal-first rule." (*People v. Fields* (1996) 13 Cal.4th 289, 310 (*Fields*); see also *People v. Carbajal* (2013) 56 Cal.4th 521, 532-533; *People v. Anderson* (2009) 47 Cal.4th 92, 114.)

"If, contrary to *Kurtzman*, the jury renders only a verdict of conviction on the lesser included offense, without a corresponding verdict of acquittal on the greater offense, its verdict of conviction is incomplete 'under the law and the instructions.'

12

[Citations.] Under these circumstances, the trial court is permitted, pursuant to [Penal Code] section 1161, to direct the jury to reconsider its verdict of conviction in light of the acquittal-first rule." (*Fields, supra,* 13 Cal.4th at p. 310.)

Here, the jury did not render verdicts of acquittal on the greater offenses. Instead, the jury rendered verdicts of conviction on the lesser offenses and no verdict at all on the greater offenses. The jury failed to properly complete the verdict forms. The trial court recognized the incomplete and irregular verdicts and directed the jury to comply with CALCRIM No. 3517. About 15 minutes later, the jury returned verdicts of conviction on the greater offenses and wrote "void" on their prior verdicts of conviction on the lesser offenses. The jury's initial verdicts of conviction on the lesser offenses was "of no effect." (*Fields, supra,* 13 Cal.4th at p. 311.) The trial court did not err.

Defendant claims that the comments in *Fields* concerning the *Kurtzman* rule are "dicta [and] do not control here." Penal Code section 1161 and the *Kurtzman* rule do control here and *Fields* reiterated their requirements. We reject defendant's claim concerning the risk of coercion as not supported by the record.

DISPOSITION

The judgment is affirmed.

HULL , J.

We concur:

RAYE , P. J.

DUARTE , J.

13