Filed 5/21/21  P. v. Alvarez CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>VICTOR ALVAREZ,<br><br>        Defendant and Appellant. | A158675<br><br>(Alameda County<br>Super. Ct. No. 17-CR-031843) |

In the course of stealing a pickup truck from the victim, James Figueroa, Jr., defendant Victor Alvarez fatally struck Figueroa with the vehicle.  Alvarez pleaded guilty to recklessly evading a peace officer during an ensuing chase, and a jury convicted him of one count of first degree felony murder and found true the allegation that he personally used a deadly weapon during the offense.  After Alvarez admitted he suffered a prior prison term under Penal Code[1] section 667.5, subdivision (b) (section 667.5(b)), the trial court sentenced him to a total term of 28 years to life in prison.

On appeal, Alvarez claims that (1) police opinion testimony about the murder weapon was improperly introduced; (2) the prosecutor erred by relying on "victim impact evidence"; (3) the one-year term imposed under

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

1

section 667.5(b) must be stricken in light of Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill No. 136); and (4) remand is required for a hearing on his ability to pay a $10,000 restitution fine and two assessments. We accept the Attorney General's concession that Alvarez is entitled to relief under Senate Bill No. 136, and we conclude that the matter must be remanded for the trial court to strike the section 667.5(b) enhancement and conduct a full resentencing, at which time the court may address the ability-to-pay issue. We otherwise affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

A.    *The Murder*

Figueroa lived with his two sons and his parents in San Lorenzo. Around 5:00 a.m. on October 19, 2017, he was preparing to go to work. As was his custom, he went outside to start his vehicle, a white GMC Sierra pickup truck parked in front of his house, and came back inside to get his coffee and lunch.

Josefina Barajas was a friend of Alvarez's who testified under a grant of immunity. Barajas testified that she and Alvarez, later accompanied by two other friends, Jose Almarez (known as "Crazy") and Clifford Hare, spent the previous night driving around the East Bay and stealing cars. Barajas, Alvarez, and Crazy also smoked crystal methamphetamine.

Early on the morning of October 19, the group stole a brown GMC Sierra pickup truck. Eventually, with Crazy driving the other three in the brown truck, the group arrived in Figueroa's neighborhood. Barajas testified that they saw "a white new truck" with its lights on and motor running. After circling around the block, the group stopped next to the white truck to make sure no one was inside.

2

Barajas testified that Alvarez got out to "see . . . if he was able to take the [white] truck" while the others stayed in the brown truck, which Crazy parked a few spaces behind the white truck. Barajas was sitting in the front seat of the brown truck, and she saw Figueroa run toward the white truck holding a lunchbox. According to Barajas, Figueroa and Alvarez "tussle[d]" near the white truck's driver's-side door, and Alvarez ended up in the driver's seat. As Alvarez was pulling the white truck forward into the street, he hit Figueroa, who "flew up in the air." Barajas testified that she could hear Figueroa's "bones . . . cracking" as he was hit.

Barajas testified that Crazy then pulled the brown truck next to the white truck so the group could talk to Alvarez. Barajas was "screaming," and Alvarez "wanted [her] to calm down, so [she] could . . . find a way to the nearest freeway." Barajas testified that she told Alvarez he had hit the other man but he did not respond. Both trucks then drove away from the scene. Barajas confirmed that the brown truck never hit or ran over Figueroa.

A witness who was also on her way to work at the time noticed "a lot of commotion" near Figueroa's house. She saw Figueroa standing in front of the white truck, which "just left" and ran into him, at which point he went "in the air." As the white truck drove by her, the witness saw a man driving it. She testified that she also saw a brown truck with at least two occupants leave the scene with the white truck.[2]

The witness called 911, and Figueroa was taken to the hospital, where he died a few days later. An autopsy revealed that he died from blunt-force trauma to his head. His skull had "a large area of fracturing" and he sustained brain trauma, injuries consistent with being in a car accident. He

---

[2] Barajas and the female witness gave inconsistent testimony about which truck followed the other.

3

had minor bruising and scrapes on his left leg, but he did not have other broken bones or major injuries. The evidence tended to suggest that he was not run over by a vehicle but instead died from hitting his head after being knocked into the air.

B.    *The Aftermath*

After fleeing from Figueroa's neighborhood, Alvarez, Barajas, Crazy, and Hare stopped near some railroad tracks in Oakland. Barajas again told Alvarez he had hit Figueroa. Alvarez, whom Barajas described as "scared" and "confused," responded, "I know." Barajas and Alvarez planned to "ransack" the white truck, but Barajas could not bring herself to do so. Instead, she waited outside the truck while Alvarez rummaged through it.

The group left, with Alvarez driving Crazy in the white truck and Barajas driving Hare in the brown truck, and stopped near the railroad tracks again several blocks away. Barajas testified that "the agreement [was] that [Alvarez] and Crazy were going to take the [white] truck into the tracks and just burn it," but she did not actually see this occur. She and Hare left to wait at Crazy's house, and about a half hour later Alvarez arrived there on foot. Barajas and Alvarez later attempted to sell some of the belongings he had taken from Figueroa's truck.

Later on the night of October 19, law enforcement officers located Alvarez, who was driving the brown truck. When the officers attempted to stop him, he "fled at a high rate of speed." After driving through numerous stoplights and stop signs throughout Oakland, Alvarez eventually reached an area with too much traffic to proceed. Alvarez then drove up onto the sidewalk, through a park, and back onto the street. Eventually, the brown truck crashed into a fence, and Alvarez attempted to escape on foot but was

4

apprehended.  The white truck was later found abandoned on the railroad tracks.

## C.    *Procedural History*

Alvarez was charged with one count of murder and accompanying allegations that he personally used a deadly and dangerous weapon—the white truck—and personally inflicted great bodily injury.  He was also charged with one count of recklessly evading a peace officer, and a prior prison term was alleged under section 667.5(b).[3]  He pleaded guilty to the reckless-evasion charge before trial.

The jury convicted Alvarez of first degree felony murder based on the underlying felony of carjacking and found true that he personally used a deadly and dangerous weapon during the murder.  It found not true the allegation that he inflicted great bodily injury on Figueroa.[4]  In October 2019, the trial court sentenced Alvarez to a total term of 28 years to life, composed of the midterm of two years for reckless evasion, a consecutive one-year term for the use of a deadly and dangerous weapon, a concurrent one-year term for the section 667.5(b) enhancement, and a consecutive term of 25 years to life for the murder.

---

[3] The charges were brought under section 187, subdivision (a) (murder), and Vehicle Code section 2800.2, subdivision (a) (reckless evasion).  The allegations accompanying the murder charge were made under sections 12022, subdivision (b)(1) (use of deadly and dangerous weapon), and 1203.075 (infliction of great bodily injury).

[4] The trial court later characterized this finding, while "odd," as a legitimate inconsistent verdict.  (See *People v. Carbajal* (2013) 56 Cal.4th 521, 532–533 [" 'The system accepts the possibility that "the jury arrived at an inconsistent conclusion through 'mistake, compromise, or lenity' " ' "].)

## II.
## DISCUSSION

*A.* *Alvarez's Challenge to the Police Officer Opinion Testimony Fails.*

Alvarez claims that the prosecution improperly elicited "police officer opinion testimony that the white truck . . . and not the brown truck . . . was the 'murder weapon,' " which amounted to an opinion that he was guilty of murder. He argues that the admission of this testimony violated his federal and state constitutional rights to due process and a fair trial. We are not persuaded.

### 1. Additional facts

A sergeant for the Alameda County Sheriff's Office who was present when the brown truck was searched testified that DNA swabs were taken from it but not tested. He explained that "the only reason" he would have wanted them tested would be to confirm Alvarez was in the brown truck, which was already established because of the chase. In addition, the truck's owner indicated "multiple people had control of that vehicle," so there could have been DNA from several unrelated individuals.

The sergeant also testified that he interviewed Barajas, Crazy, and Hare during the investigation. The prosecutor then asked, "After conducting these interviews, did you feel it necessary to go back and process the brown truck in any way?" The sergeant indicated he did not, and the following exchange then occurred:

> "[PROSECUTOR]: Throughout the entirety of your investigation in this case, is there any evidence or statements that caused you to believe the brown truck was the murder weapon?
>
> "[DEFENSE COUNSEL]: Objection. Irrelevant, as to what his conclusions were.

6

"THE COURT: Can you rephrase? I'm going to sustain. I think it's a little broad.

"[PROSECUTOR]: Throughout the entirety of your investigation, was there any evidence or statements that caused you to investigate the brown vehicle as the murder weapon?

"[SERGEANT]: Um, no. Not in any way. All statements and evidence lead us to believe that the white vehicle was the vehicle used to run over James Figueroa."

### 2. Analysis

Lay opinion testimony is permissible if the opinion is "[r]ationally based on the perception of the witness" and "[h]elpful to a clear understanding of [the witness's] testimony." (Evid. Code, § 800.) "A witness may not express an opinion on a defendant's guilt. [Citations.] The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.] 'Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77.) A trial court's evidentiary rulings are reviewed for an abuse of discretion. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 131.)

The Attorney General argues that Alvarez forfeited this claim because the objection below was "only on the ground that [the sergeant's] testimony was irrelevant," not that the testimony was an improper opinion about guilt. We agree. An evidentiary objection must be "so stated as to make clear the specific ground of the objection." (Evid. Code, § 353, subd. (a).) Alvarez's objection on relevance grounds did not clearly convey the claim about improper opinion testimony he now advances on appeal. Moreover, once the

7

prosecutor rephrased the question and the sergeant answered it, Alvarez did not object again, further suggesting he did not challenge the testimony as an opinion on guilt.

Even if Alvarez's objection had preserved the claim, any error was harmless. We agree with Alvarez that the key disputed issue was whether the white truck or the brown truck hit Figueroa, as it was undisputed that Alvarez was driving the white truck. We will also assume, as Alvarez urges, that the sergeant's testimony that all the evidence the investigation uncovered suggested the white truck hit Figueroa could be construed as testimony that all the evidence suggested Alvarez committed the crime. But there was almost no evidentiary support for the theory that the brown truck struck Figueroa, and it is highly unlikely that the sergeant's brief testimony swayed any jurors on this issue. Therefore, any error was harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24), and it is not reasonably probable that Alvarez would have obtained a more favorable verdict had the testimony been excluded (*People v. Watson* (1956) 46 Cal.2d 818, 836).

B.      *Alvarez's Claim of Prosecutorial Error Lacks Merit.*

Alvarez next contends that the prosecutor erred by eliciting "victim impact evidence" from Figueroa's mother and relying on it in the opening statement. We reject this claim.

1.      Additional facts

During her opening statement, the prosecutor stated that she wanted to "introduce" the jury to Figueroa, who "would have been 48 years old in just two and a half weeks. To his friends and family, he was known as Kimo. And, in addition to his vast amount of friends and extended family, Kimo was [a] son . . . [,] a brother . . . [, and] a father to two sons." The prosecutor also

8

told the jury that Figueroa and his sons lived with Figueroa's parents and that Figueroa "was working at a construction job," "coaching [L]ittle [L]eague," and "even studying to be a [Boy Scout] leader. Kimo was a hardworking man."

Figueroa's mother, the first witness the prosecution called, testified that Figueroa was a heavy equipment operator and did "a lot of things for [his parents] around the house, and he was in the middle of re-stuccoing the house" when he died. She also testified that Figueroa was an A's and Raiders fan, was "very involved" with his two sons' sports activities, and was active with the Boy Scouts. Alvarez did not object to either this testimony or the prosecutor's description of Figueroa in the opening statement.

During closing argument, Alvarez's trial counsel stated that since the District Attorney had chosen to charge Alvarez with murder only, the jury did not "have the opportunity to convict him of carjacking" or another lesser crime. On rebuttal, the prosecutor responded as follows:

> "The defense talked about the fact that the defendant is not here facing car theft or even carjacking charges. Do you know how you would know that he was appropriately charged with car theft or carjacking? Because James Kimo Figueroa, Jr.[,] would have walked through those doors over there. He would have walked up to this witness stand[,] he would have taken the same oath that every other witness in this trial took[,] and he would have told you exactly what happened on October 19. The reason that this is not charged as a car theft or a car[]jacking . . . [is] because the defendant killed Kimo in this case."

2. Analysis

Prosecutorial error "occurs, as a matter of state law, when a prosecutor 'engage[s] in deceptive or reprehensible tactics in order to persuade the trier of fact to convict.' [Citation.] Federal constitutional error occurs only when the prosecutor's actions 'comprise a pattern of conduct that is serious and

9

egregious, such that the trial is rendered so unfair that the resulting conviction violates the defendant's right to due process of law.' " (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 854.)

The Attorney General argues that Alvarez forfeited this claim because he did not object to the prosecutor's statements or Figueroa's mother's testimony. Generally, "in order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection to the alleged misconduct and request the jury be admonished to disregard it." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1339.) We agree with the Attorney General that because Alvarez failed to object below, this claim is not preserved for appeal. Nonetheless, since Alvarez argues that his trial counsel rendered ineffective assistance by failing to object, we will address the claim on the merits.

Alvarez calls his claim one of prosecutorial error, but essentially it is a claim that Figueroa's mother's testimony about Figueroa was inadmissible. " 'Although it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony [citation], merely eliciting evidence is not misconduct.' " (*People v. Chatman* (2006) 38 Cal.4th 344, 379–380.) Rather, a claim that a prosecutor elicited inadmissible testimony is akin to a claim that the evidence was erroneously admitted. (See *id.* at p. 380.) In turn, the only reason that Alvarez claims the prosecutor's opening statement was improper was because it relied on the purportedly inadmissible evidence. Accordingly, the determinative issue is whether the testimony was properly admitted.

Alvarez argues that victim impact evidence "is irrelevant and poses the unacceptable danger of encouraging jurors to render a decision based on sympathy and emotions untethered to the facts of the case." It is true that

10

such evidence, which "relate[s] to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family" (*Payne v. Tennessee* (1991) 501 U.S. 808, 817), is generally inadmissible at the guilt stage of a capital trial. (*People v. Salcido* (2008) 44 Cal.4th 93, 150–151.) But characterizing the challenged testimony as victim impact evidence does not alter the analysis of whether it is inadmissible on a ground, such as relevance or undue prejudice, that applies to any other type of evidence. (See *People v. Banks* (2014) 59 Cal.4th 1113, 1165; *People v. Redd* (2010) 48 Cal.4th 691, 731, fn. 20.)

Alvarez fails to convince us that the challenged testimony was irrelevant. Relevant evidence is that "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action" (Evid. Code § 210), and trial courts have "broad discretion in determining the relevance of evidence." (*People v. Crittenden* (1994) 9 Cal.4th 83, 132.) As the Attorney General points out, some of the challenged testimony was directly relevant to the charged offense, to the extent it explained why Figueroa left his truck running while he was at his parents' house early on the morning in question. In addition, the fact he was an Oakland A's fan was relevant because A's tickets with consecutive seat numbers were found in the white truck and the brown truck. And while other details about Figueroa did not clearly bear on contested issues in the case, we cannot say that the trial court lacked discretion to admit evidence of his basic biographical background.

Nor was the challenged evidence unduly prejudicial. Alvarez does not explain why Figueroa's mother's testimony was objectionable on this ground. Instead, he suggests that the prosecutor's statements in closing argument constituted an improper appeal to the jury's sympathy. To the extent Alvarez

intends to raise a separate claim of prosecutorial error as to these statements, we reject it. Although he is correct that " '[a]n appeal for sympathy for the victim is out of place during an objective determination of guilt' " (*People v. Kipp* (2001) 26 Cal.4th 1100, 1130), the prosecutor's argument here was not such an appeal. Rather, in response to a specific defense argument, it focused on the *legal* significance of Figueroa's death. Thus, it was not akin to the erroneous argument in *Kipp*, which invited the jury to concentrate on the fact that " '[a] living, breathing human being had all of that taken away' " (*id.* at pp. 1129–1130), or other arguments that improperly focus on the human impact of the victim's death. (See, e.g., *People v. Vance* (2010) 188 Cal.App.4th 1182, 1188 [prosecutor committed misconduct by "invit[ing] the jury to put itself in the [murder] victim's position and imagine what the victim experienced"].)

In any case, even if any of the challenged testimony was inadmissible or any of the prosecutor's statements were improper, the error was patently harmless. Alvarez provides little argument on this point, asserting only that "[t]he improper victim impact testimony encouraged the jury to reach a verdict based on sympathy and emotion, rather than an analysis of the facts." But Figueroa's mother's testimony about her son's characteristics was quite brief, and the prosecutor merely touched upon them in her opening statement. And as mentioned above, the case against Alvarez was very strong, since the evidence almost uniformly indicated that he was driving the white truck when it struck Figueroa. Thus, we again conclude that any error was harmless beyond a reasonable doubt (*Chapman v. California*, *supra*, 386 U.S. at p. 24), and it is not reasonably probable that Alvarez would have obtained a more favorable verdict had the purported error not occurred (*People v. Watson*, *supra*, 46 Cal.2d at p. 836).

Finally, Alvarez asserts that this court "should consider the cumulative prejudicial impact of the improper victim impact [testimony] and the improper police officer opinion as to guilt[]." We have concluded that no error occurred involving the evidence about Figueroa's background, and any error in admitting the police opinion testimony was harmless for the reasons given above. As a result, Alvarez's claim of cumulative error fails.

C.    *Remand Is Required for the Trial Court to Strike the Section 667.5(b) Enhancement and Conduct a Full Resentencing.*

Alvarez contends that this court should strike the one-year concurrent term the trial court imposed under section 667.5(b), because after he was sentenced the statute was amended to eliminate such sentences except in cases involving sexually violent offenses. The Attorney General, while conceding that Alvarez is entitled to relief, argues that remand for resentencing is the appropriate remedy. We agree with the Attorney General.

" 'Effective as of January 1, 2020, Senate Bill [No.] 136 . . . amend[ed] section 667.5[(b)] to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b).' " (*People v. France* (2020) 58 Cal.App.5th 714, 718.) As the parties agree, Senate Bill No. 136 is retroactive and therefore applies to Alvarez because his case is not yet final. (See *In re Estrada* (1965) 63 Cal.2d 740, 742; *France*, at p. 719; *People v. Keene* (2019) 43 Cal.App.5th 861, 865.)

The Attorney General contends that we should remand the matter for resentencing instead of striking the section 667.5(b) enhancement ourselves. We agree. Generally, "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed

13

circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) This rule does not apply when "the trial court has already imposed the maximum possible sentence, [making] a remand for resentencing . . . unnecessary." (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772–773.) But here, Alvarez pleaded guilty to reckless evasion as an open plea, not in exchange for a particular term, and the trial court exercised its discretion to impose the midterm. Accordingly, remand for a full resentencing is appropriate. (See *People v. Choi* (2021) 59 Cal.App.5th 753, 770.)

### D. The Trial Court Should Address Various Fines-and-fees Issues During Resentencing.

The trial court imposed a $40 court operations assessment under section 1465.8, subdivision (a), a $60 criminal conviction assessment under Government Code section 70373, and a $10,000 restitution fine under section 1202.4, subdivision (b).[5] Alvarez's trial counsel, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), objected "to imposition of fines and fees absent a determination of [his] client's ability to pay" and asked the court "to find that in fact given [Alvarez's] prolonged incarceration and his anticipated very lengthy incarceration that he has no ability to pay." The court responded, "I think you're right about him having no ability to pay," but after noting the appellate split on the issue, it declined to follow *Dueñas*.

Relying on *Dueñas* and *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844, Alvarez contends that the assessments must be stricken and the restitution fine must be stayed unless and until the trial court finds he is able to pay them. Since the court considered the issue, the law in this area has continued to develop. (See, e.g., *People v. Cowan* (2020)

---

[5] The only other charge was a parole revocation restitution fine, which the trial court imposed and suspended under section 1202.45, subdivision (a).

14

47 Cal.App.5th 32, 34–35, review granted Jun. 17, 2020, S261952 [constitutional prohibition of excessive fines requires ability-to-pay hearing when same three charges challenged].) In addition, although the Attorney General does not raise the issue, we note that the court did not impose one $40 assessment per conviction under section 1465.8 as required. Because a full resentencing will occur on remand, we conclude that is premature to address these issues. Instead, the court should consider them when resentencing Alvarez.

### III.
#### DISPOSITION

The matter is remanded with directions to strike the one-year enhancement imposed under section 667.5(b) and conduct a full resentencing. The judgment is otherwise affirmed.

_____

Humes, P.J.


WE CONCUR:


_____

Banke, J.


_____

Sanchez, J.


*People v. Alvarez*  A158675

16