Filed 5/8/23  P. v. Ramirez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JERONIMO ISMAEL TOMAS RAMIREZ,<br><br>    Defendant and Appellant. | F083185<br><br>(Super. Ct. No. F21900047)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Gary R. Orozco, Judge.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kari Ricci Mueller and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2019, defendant Jeronimo Ismael Tomas Ramirez was arrested in connection with a residential burglary and sexual assault of the 89-year-old homeowner and a separate residential burglary committed shortly thereafter several miles away. Defendant was charged by information with one count of forcible sexual penetration (Pen. Code, § 289, subd. (a)(1)(A); count 1),[1] one count of assault with intent to commit rape during the commission of first degree burglary (§ 220, subd. (b); count 2), two counts of first degree burglary (§§ 459/460, subd. (a); counts 3 & 6), one count of assault with intent to commit rape (§ 220, subd. (a)(1); count 4), and one count of elder abuse (§ 368, subd. (b)(1); count 5). As to count 1, the information alleged the offense was committed during the commission of burglary, for the purpose of One Strike law sentencing. (§ 667.61, subd. (e)(2).) As to count 3, the information alleged the offense was committed when another person other than an accomplice was present in the residence. (§ 667.5, subd. (c)(21).)

In 2021, the jury convicted defendant on all six counts and found the allegations attached to counts 1 and 3 true. The trial court imposed terms of 25 years to life on count 1 under section 667.61, subdivision (a), of the One Strike law, and life in prison with the possibility of parole on count 2, to run consecutively pursuant to section 667.6, subdivision (c). On count 6, the court imposed the middle term of four years and, pursuant to section 654, the court imposed and stayed the middle term of four years on count 3 and count 4, and the middle term of three years on count 5.

---

[1] All further statutory references are to the Penal Code unless otherwise specified. Section 289, subdivision (a)(1)(A), proscribes sexual penetration "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury …." This case involves penetration by force, and we shall refer to the offense accordingly.

Defendant filed a timely notice of appeal. With respect to the burglary special circumstance allegation attached to count 1,[2] defendant claims the trial court erred when it instructed the jury, in relevant part, that the prosecutor must prove he entered the victim's house with the intent to either commit theft *or* commit sexual penetration by force, and that the error is prejudicial, including because it resulted in the imposition of a sentence of 25 years to life under section 667.61, subdivisions (a) and (d)(4). If we find his instructional error claim forfeited for failure to object, he claims ineffective assistance of counsel.

Defendant also claims that his convictions for burglary in count 3 and for assault with the intent to commit rape in count 4 must be reversed because they are lesser included offenses of count 2, assault with the intent to commit rape during the commission of burglary. Finally, he claims the trial court abused its discretion in imposing consecutive sentences on counts 1 and 2 under section 667.6, subdivision (d)(1), because the court's finding that there was an opportunity to reflect between the commission of acts, sufficient to support a finding of separate occasions, is not supported by substantial evidence.

The People dispute defendant's characterization of his first claim as one of instructional error and instead argue that it is a sentencing error, subject to correction to reflect a sentence of 15 years to life under section 667.61, subdivisions (b) and (e)(2), rather than a sentence of 25 years to life under section 667.61, subdivisions (a) and (d)(4). The People concede defendant's entitlement to relief on his second claim because counts 3 and 4 are lesser included offenses of count 2. Finally, they dispute any entitlement to relief on the third claim on the ground that a more reasonable reading of

---

**2** On appeal, defendant refers to the allegation under section 667.61 as an enhancement, as did the prosecutor and the trial court. As discussed *post*, however, section 667.61 is an alternative sentencing scheme that applies to certain enumerated sex crimes committed under one or more enumerated special circumstances. (*People v. Carbajal* (2013) 56 Cal.4th 521, 534 (*Carbajal*).)

3.

the record is that the court sentenced defendant to consecutive terms on counts 1 and 2 under section 667.6, subdivision (c), which does not require a finding of separate occasions.

We agree with the parties that defendant is entitled to reversal of counts 3 and 4 because they are lesser included offenses of count 2. (*People v. Dyser* (2012) 202 Cal.App.4th 1015, 1021.) However, we reject defendant's claim that he is entitled to reversal of the burglary special circumstance finding attached to count 1. As explained *post*, the trial court erred in including a factually inadequate theory in its instruction to the jury, but the error does not require reversal because a valid ground for the verdict remains. (*People v. Aledamat* (2019) 8 Cal.5th 1, 7 (*Aledamat*).) We agree that defendant's sentence of 25 years to life on count 1 under section 667.61, subdivisions (a) and (d)(4), is unauthorized, and we shall modify the judgment to reflect a sentence of 15 years to life under section 667.61, subdivisions (b) and (e)(2). (§ 1260.)

Finally, we reject defendant's claim of sentencing error under section 667.6, subdivision (d)(1). The record expressly reflects that the trial court exercised its sentencing discretion and imposed consecutives terms on counts 1 and 2 under subdivision (c) of section 667.6, which applies to certain sex crimes committed against "the same victim on the same occasion." Accordingly, we reverse counts 3 and 4 as lesser included offenses of count 2, and we reduce defendant's sentence on count 1 to 15 years to life under section 667.61, subdivisions (b) and (e)(2). Except as modified, the judgment is affirmed.

## FACTUAL SUMMARY

### I. Facts Underlying Crimes

In December 2019, 89-year-old Bessie H. was living alone in her long-time home on Mt. Whitney Avenue, located in an agricultural area in Laton. Bessie wore a Medical Guardian alert around her neck and in the later morning hours of December 25, a company representative contacted Bessie after receiving an alert and asked if she needed

4.

help. In the recorded call, which was played for the jury, Bessie was yelling and screaming, and she responded, "Yes, I do. He's in my house." She also screamed, "Oh my god—get help," and "He['s] trying to rape me.… Help. No. No. No!"

Medical Guardian alerted Bessie's son, Stan, who lived about 30 minutes away, and one of her daughters, Sharon, who lived closer. Stan called Bessie's next-door neighbor, Sue, and asked her to check on Bessie because an intruder was robbing her. Sue's roommate, Dennis, grabbed a pipe from their yard and walked over while Sue drove her car. They saw Bessie walking outside as if heading toward their house. Sue assisted Bessie into her car and drove back home. Dennis checked around the perimeter, but did not find anyone. While Sue was on the phone with 911, she saw a white truck or SUV speeding down a dirt access road on a neighboring dairy, which stood out to her.

Deputies with the Fresno County Sheriff's Office were dispatched to the Mt. Whitney address for a possible burglary and rape or attempted rape. As deputies were responding, a second call for service came in regarding a residential burglary on Cornelia Avenue, approximately seven and one-half miles away from Bessie's house. The Cornelia Avenue house was located on a dairy and the dairy owner, Gerrit D., had encountered a man earlier, subsequently identified as defendant, at the back door of the office. Defendant asked for a friend or an employee by a name that Gerrit did not recognize. Gerrit told him to come back the next day because the office was closed for Christmas and, as he watched, defendant drove away in a white SUV.

In his rearview mirror, Gerrit saw the SUV stop at the home of one of his sons, Rimmert. Rimmert and his family were not home at the time, so Gerrit dropped his wife off at the nearby house of his other son, Nathan, and he and Nathan drove to Rimmert's house to investigate. Nathan entered the home through the back door and found defendant in the bedroom of Rimmert and his wife. Defendant appeared inebriated and somewhat confused to Nathan, but he went outside with Nathan without any resistance. Gerrit called 911, and the three waited for deputies to arrive.

5.

Defendant was wearing what one deputy described as a gold or dark yellow sweatshirt with "U.S.A." on the front, and he had a jewelry box with earrings in it, some gold coins, and a watch in his possession, all of which belonged to Rimmert's family. Bessie had described her assailant as a Hispanic man in his 20's or 30's with short hair wearing a brownish or tannish jacket, so a deputy drove defendant over to Mt. Whitney for an in-field showup.[3] Bessie had vision problems due to macular degeneration and was unable to identify defendant as her assailant because she could not see his face clearly, but she said "the jacket looks to be the same color and the hair is the same."

Bessie refused to be transported to the hospital by ambulance, so Sharon took her that afternoon. After Bessie was treated for high blood pressure, she was given a Sexual Assault Forensic Evidence (SAFE) examination by Mikaela Soto, a registered nurse. Bessie had some scrapes and bruising on her lip, the back of her hand, her elbow, and her hip area, and she reported that her assailant held her down. Soto testified that Bessie was not 100 percent certain she had been, "by the word, 'sexually assaulted.'" Bessie responded to Soto that her assailant did not penetrate her vagina with his penis and when Soto asked if he penetrated her vagina with a finger, Bessie stated that "'[h]e put his hands down [her] pants.'" Based on that response, Soto checked the "'[y]es'" box on her report for penetration by finger rather than "'attempted'" or "'unsure.'" Soto swabbed Bessie's hands and fingernails, but Bessie declined a pelvic exam because she did not feel it was necessary.

## II. Forensic Evidence

Analysis of the data extracted from defendant's cell phone placed the device in the area of both crime scenes during the time of the offenses. Additionally, Bessie's DNA was found in samples taken from defendant's hands and fingernail scrapings, and

---

**3** Defendant was 36 years old at the time of the offenses.

defendant was identified as a possible minor contributor of DNA samples taken from Bessie's right hand and fingernails.

## III. Bessie's Conditional Examination Testimony

Bessie died in early September 2020, prior to the preliminary hearing. A videorecording of her conditional examination, conducted in late August 2020, was played for the jury. Bessie testified she had been in and out of her house that morning. After she went into her bedroom and then returned to the kitchen, she saw a man had entered through the sliding door and was standing there. She told him to get out and she opened the back door into the garage, intending to open the garage door and escape. She was within an inch or so of reaching the garage door opener when the man grabbed her arm and they fell to the cement floor in the garage with the man on top of her. Bessie's medical alert necklace was activated, either by her or by her fall.

Someone from Medical Guardian contacted Bessie and she reported that the man was putting his hands in her pants. She did not recall if she told the person that "he went ahead and went far enough down he got into [her] vagina," but "[t]hat is what was happening." Bessie testified that the man unbuttoned her pants and tried to pull them off, but ended up just sticking his hands down her pants. She testified that he put one or two fingers all the way inside of her vagina. During the assault, he kept saying, "'Money, money, money,'" and she told him she did not have any money. She struggled to get away and kept telling the man the police were coming. Because she lived near a road, there was a lot of noise, and the man finally got up and left after she said she thought she heard the police outside. Bessie was then able to get up, open the garage door, and walk outside, where she saw her neighbor and her son.

Bessie went with her neighbor to her neighbor's house for a while. Sharon took her to the hospital later that day, where she was examined. She thought she told the nurse and the police what the man did to her, but she did not remember for sure. She said, "I'm sure that I did tell [the nurse] that. It is hard to remember everything after all those things

7.

going on. I would have been very stupid not to remember to do that." She was unable to identify the man they brought by her house, however, and explained, "No, I wouldn't take the chance to try and identify somebody that I couldn't see that well."

## DISCUSSION

### I.    Instructional and Sentencing Error Under One Strike Law

#### A.    Background

Section 667.61, known as the One Strike law, is an alternative sentencing scheme that applies to certain enumerated felony sex offenses. (*Carbajal, supra*, 56 Cal.4th at p. 534.) Depending on the offense committed and the special circumstance allegations found true, the statute mandates terms of 15 years to life, 25 years to life, or life without the possibility of parole. (§ 667.61, subds. (a), (b), (j), (*l*), (m); *Carbajal, supra*, at p. 534; *People v. Anderson* (2009) 47 Cal.4th 92, 102.)[4]

Defendant was convicted in count 1 of forcible sexual penetration, in violation of section 289, subdivision (a)(1)(A), which is a qualifying offense under the One Strike law. (§ 667.61, subd. (c)(5).) The special circumstances relevant in this case are subdivisions (d)(4) and (e)(2) of section 667.61. Subdivision (d)(4) applies if "[t]he defendant committed the present offense during the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460, *with intent to commit an offense specified in subdivision* (c)." (*Ibid.*, italics added.) Subdivision (e)(2) of section 667.61 applies, "[e]xcept as provided in paragraph (4) of subdivision (d), [if] the defendant committed the present offense during the commission of a burglary in violation of Section 459." (*Ibid.*)

Under the One Strike law, subdivision (a) of section 667.61 mandates a sentence of 25 years to life if either one of the circumstances under subdivision (d) or two or more

---

[4]    Subdivisions (j), (*l*), and (m) of section 667.61 apply to minor victims and are not relevant here.

of the circumstances under subdivision (e) are found true; and subdivision (b) mandates a lesser sentence of 15 years to life if only one of the circumstances under subdivision (e) is found true. (§ 667.61, subds. (a)–(b), (d)–(e).) The jury here returned a verdict finding that defendant committed sexual penetration by force during the commission of first degree burglary, which is the special circumstance finding under subdivision (e)(2) of section 667.61 and results in a mandatory sentence of 15 years to life under subdivision (b) of the statute.

However, relevant to defendant's claim of error, the trial court instructed the jury that the prosecution must prove that "[w]hen the defendant entered the house he intended to commit theft *or sexual penetration by force* …." (Italics added.) The trial court subsequently sentenced defendant to 25 years to life, which would be the statutorily mandated sentence if defendant committed the forcible sexual penetration during the commission of first degree burglary with the intent to commit a sexual offense specified under subdivision (c), which includes sexual penetration and rape. (§ 667.61, subds. (a), (c), (d)(4).)

Defendant claims that this instruction was erroneous and that the error was prejudicial, necessitating reversal of the burglary special circumstance finding. The People disagree that an instructional error occurred and instead argue that the imposition of a sentence of 25 years to life under subdivisions (a) and (d)(4) of section 667.61 was unauthorized, but given the jury's burglary special circumstances finding, we may modify the judgment on appeal to reflect a sentence of 15 years to life. As explained next, we agree with defendant that an instructional error occurred, but it does not require reversal of the jury's special circumstance finding. (*Aledamat, supra*, 8 Cal.5th at p. 1.) In accordance with section 1260, we shall reduce the punishment on count 1 to reflect a sentence of 15 years to life under section 667.61, subdivisions (b) and (e)(2).[5]

---

[5]    We do not reach defendant's alternative argument that by failing to object to the special circumstance instruction on count 1, trial counsel rendered ineffective assistance of counsel.

9.

**B.      Standard of Review**

We review a claim of instructional error de novo.  (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)  "In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case."  (*People v. Martinez* (2010) 47 Cal.4th 911, 953.)  "[I]nstructions are not considered in isolation.  Whether instructions are correct and adequate is determined by consideration of the entire charge to the jury."  (*People v. Holt* (1997) 15 Cal.4th 619, 677; accord, *People v. Thomas* (2011) 52 Cal.4th 336, 356.)  Jurors are presumed to have understood and followed the trial court's jury instructions.  (*People v. Sandoval* (2015) 62 Cal.4th 394, 422.)

**C.      Analysis**

**1.      Jury Instructed on Factually Inadequate Theory**

With respect to counts 3 and 6, first degree burglary, the trial court instructed the jury that the People must prove defendant entered a structure intending to commit theft and defined first degree burglary as burglary of an inhabited house.  With respect to count 2, assault to commit rape during the commission of burglary, the court instructed the jury that the People must prove that when defendant acted, he was committing a first degree burglary as defined by another instruction.  However, when it came to the special circumstance finding attached to count 1, the court instructed the jury that in deciding if defendant committed forcible sexual penetration during the commission of a first degree

---

Generally, the failure to object in the trial court forfeits a claim on appeal, but there is an exception "if the substantial rights of the defendant were affected thereby."  (§ 1259; accord, *People v. Johnson* (2016) 62 Cal.4th 600, 638.)  Given that it was error to instruct the jury that defendant committed burglary if he entered the house with the intent to commit theft *or sexual penetration by force*, we elect to exercise our discretion to reach the claim on its merits without deciding whether the forfeiture doctrine applies.  (*People v. Johnson, supra*, at p. 639.)

burglary, it must decide if he entered the house intending to commit theft *or sexual penetration by force*.

"The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense" (*Carella v. California* (1989) 491 U.S. 263, 265, citing *In re Winship* (1970) 397 U.S. 358, 364), and the verdict, including the jury's special circumstance finding here, must be supported by substantial evidence (*People v. Boyce* (2014) 59 Cal.4th 672, 691; *People v. Zamudio* (2008) 43 Cal.4th 327, 357). In instructing the jury, trial courts have a duty to instruct "on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof." (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.) An instruction not supported by substantial evidence or that might mislead or confuse the jury should not be given. (*People v. Peoples* (2016) 62 Cal.4th 718, 768; *People v. Parson* (2008) 44 Cal.4th 332, 350.)

Here, there is no evidence in the record that would support the theory that defendant entered Bessie's house with the intent to commit a sex offense. The evidence shows only that Bessie was in and out of her house that morning, and at one point, she went back to her bedroom and returned to find defendant standing in her kitchen. The only thing defendant said to Bessie was, "'Money, money, money.'" When she opened the back door and reached for the garage door opener to escape, defendant grabbed her arm, they fell to the floor, and defendant then tried to unbutton her pants before putting his hand down her pants and digitally penetrating her vagina.

During the jury instruction conference, the court commented that "some jurors could have the opinion he broke in there to commit a sex crime, [and] other jurors [that] he broke in to commit theft and it was after the thought while he was in the commission of the burglary." However, there is no credible evidence to support the theory that

defendant *entered* with the intent to commit a sex offense and while the jury may draw reasonable inferences from the evidence, "'[a]n inference is not reasonable if it is based only on speculation.'" (*People v. Hughes* (2002) 27 Cal.4th 287, 365; accord, *People v. Ware* (2022) 14 Cal.5th 151, 167–168.) Therefore, given the absence of evidentiary support for the theory, it was error to include "or sexual penetration by force" in instructing the jury on intent at the time of entry. (*Aledamat, supra*, 8 Cal.5th at p. 7.)

### 2. Error Does Not Require Reversal

Although neither party cites the California Supreme Court's decision in *Aledamat*, it sets forth the operative analysis with respect to errors of this nature. (*Aledamat, supra*, 8 Cal.5th 1.) Where the jury is instructed on a factually inadequate theory, "the theory is incorrect only because the evidence does not support it." (*Id.* at p. 7, citing *People v. Guiton* (1993) 4 Cal.4th 1116, 1128 (*Guiton*).) "'[I]f the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground.'" (*Aledamat, supra*, quoting *Guiton, supra*, at p. 1129.)

In contrast, a legally inadequate, or incorrect, theory is contrary to law. (*Aledamat, supra*, 8 Cal.5th at p. 7, citing *Guiton, supra*, 4 Cal.4th at p. 1128.) "An example of this second category 'is a case where the inadequate theory "fails to come within the statutory definition of the crime."'" (*Aledamat, supra*, at p. 7, quoting *Guiton, supra*, at p. 1128.) "When the theory is legally erroneous—i.e., of a kind the jury is *not* equipped to detect—a higher standard must be met for the error to be found harmless. 'These different tests reflect the view that jurors are "well equipped" to sort *factually* valid from invalid theories, but ill equipped to sort *legally* valid from invalid theories.'" (*Aledamat, supra*, at p. 7.)

In sum, "'[a] legal error is an incorrect statement of law, whereas a factual error is an otherwise valid legal theory that is not supported by the facts or evidence in a case.

[Citation.] Between the two, legal error requires a more stringent standard for prejudice, for jurors are presumed to be less able to identify and ignore an incorrect statement of law due to their lack of formal legal training. [Citation.] Factual errors, on the other hand, are less likely to be prejudicial because jurors are generally able to evaluate the facts of a case and ignore factually inapplicable theories.'" (*Aledamat, supra*, 8 Cal.5th at p. 8, quoting *People v. Stutelberg* (2018) 29 Cal.App.5th 314, 318.)

The error in this case is factual. (*Aledamat, supra*, 8 Cal.5th at p. 7.) Notwithstanding the trial court's error in instructing on count 1, by virtue of counts 2, 3 and 6, the jury was instructed on the definition of first degree burglary and that defendant committed burglary if he entered the structure intending to commit theft. In convicting defendant of burglary in count 3, the jury necessarily found that he entered Bessie's house intending to commit theft, a clear and well-supported theory given Bessie's testimony that the *only* thing defendant asked for was money and his subsequent theft of items from Rimmert's house. There is no affirmative indication in the record that the jury's special circumstance finding rested on the factually *inadequate* theory that defendant entered Bessie's house with the intent to commit sexual penetration by force rather than the factually *adequate* theory that he intended to commit theft, and defendant does not claim otherwise. (*Ibid.*) Accordingly, the instructional error does not require reversal of the burglary special circumstance finding. (*Ibid.*)

We acknowledge defendant's argument that the error confused the jury with respect to the necessary intent. He contends that "the instructions regarding the intent elements of Counts 1, 2, and 3 were hopelessly misleading if not outright a conflicting version of the law as applied to these facts," and "when read in the context of the jury charges as a whole, 'there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner' based on the instructions they were given." (Quoting *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220, disapproved on another ground by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) However, *Aledamat* controls

the analysis for instructional errors of this type and reversal of the burglary special circumstance finding is not required under the facts of this case. (*Aledamat, supra*, 8 Cal.5th at p. 8.) We are unpersuaded that there is *any* reasonable likelihood the erroneous instruction on the burglary special circumstance allegation attached to count 1 otherwise confused or misled the jury with respect to its findings on count 2 or count 3. (*People v. Tran* (2022) 13 Cal.5th 1169, 1199.)

We agree with defendant that given the absence of a special circumstance finding under subdivision (d)(4) of section 667.61, imposition of a sentence of 25 years to life under section 667.61, subdivision (a), was unauthorized, but the remedy does not require reversal of the special circumstance finding. Rather, the jury's finding that defendant committed sexual penetration by force during the commission of a burglary, within the meaning of subdivision (e)(2) of section 667.61, results in a sentence of 15 years to life under section 667.61, subdivision (b), and we may correct the error on review by modifying the judgment accordingly. (§ 1260.)

## II. Counts 3 and 4 Are Lesser Included Offenses of Count 2

Next, it is well settled that "[a] defendant may be convicted of more than one offense based on the same act or a single course of conduct. [Citations.] However, a defendant may not be convicted of two such offenses if one is a necessarily included lesser offense of the other." (*People v. Robinson* (2014) 232 Cal.App.4th 69, 73, citing § 954 & *People v. Reed* (2006) 38 Cal.4th 1224, 1227; accord, *People v. Delgado* (2017) 2 Cal.5th 544, 570.) "[I]f the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that the greater offense cannot be committed without also committing the lesser offense, the latter is necessarily included in the former." (*People v. Robinson, supra*, at p. 74, citing *People v. Reed, supra*, at p. 1230 & *People v. Smith* (2013) 57 Cal.4th 232, 240.)

The parties agree that defendant's convictions for first degree burglary (count 3) and assault with intent to commit rape (count 4) are lesser included offenses of assault

with intent to commit rape during the commission of first degree burglary (count 2). (*People v. Dyser, supra*, 202 Cal.App.4th at p. 1021.) We concur. (*Ibid.*) The greater conviction is controlling and, therefore, we shall reverse defendant's convictions on count 3 and count 4. (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

## III. Imposition of Consecutive Sentences Under Section 667.6

### A. Background

Finally, defendant claims that the trial court erred in imposing consecutive sentences on count 1 and count 2 under section 667.6, subdivision (d)(1), which provides that "[a] full, separate, and consecutive term *shall* be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims *or involve the same victim on separate occasions*." (Italics added.) The People take the position that a more reasonable construction of the record is that the court sentenced defendant to consecutive terms under subdivision (c) of section 667.6, which provides that "a full, separate, and consecutive term *may* be imposed for each violation of an offense specified in subdivision (e) *if the crimes involve the same victim on the same occasion*." (Italics added.) In the alternative, the People argue that the trial court did not abuse its discretion in sentencing defendant to mandatory consecutive terms under section 667.6, subdivision (d)(1), because substantial evidence supports a finding that defendant committed forcible sexual penetration and assault with intent to commit rape on separate occasions.

The jury convicted defendant of both forcible sexual penetration and assault with intent to commit rape. Because the crimes involved the same victim on the same occasion, the trial court had the discretion to sentence defendant to consecutive terms under subdivision (c) of section 667.6. As discussed next, we agree with the People that the record reflects the trial court exercised discretion in selecting consecutive sentences under subdivision (c) of section 667.6. Therefore, we do not reach defendant's argument

15.

that there is insufficient evidence to support a finding that the crimes were committed on separate occasions within the meaning of section 667.6, subdivision (d)(1).

**B.      Analysis**

We presume that a judgment or order of the trial court is correct (*People v. Giordano* (2007) 42 Cal.4th 644, 666), and the moving party bears the burden of demonstrating error on appeal (*People v. Gamache* (2010) 48 Cal.4th 347, 378; *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523; *People v. Clifton* (1969) 270 Cal.App.2d 860, 862).  As the party challenging the sentence, defendant bears the burden of ""clearly show[ing] that the sentencing decision was irrational or arbitrary.  [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.""  (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377, quoting *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978; accord, *People v. Lee* (2017) 16 Cal.App.5th 861, 866.)

Defendant's claim of error, based on insufficient evidence that he committed his crimes against Bessie "on separate occasions," is premised on our agreement that the trial court imposed mandatory consecutive terms under subdivision (d)(1) of section 667.6. He does not otherwise challenge the sentence as an abuse of discretion (see *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 ["'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.'"]), although he cites *People v. Reeder* in his reply for the proposition that "'[a] decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively'" (*People v. Reeder* (1984) 152 Cal.App.3d 900, 912, quoting *People v. Belmontes* (1983) 34 Cal.3d 335, 347).  Defendant observes that "[t]he trial court did not state or adopt the probation officer's recommendations on the record," and did not follow the recommendations in their entirety.

16.

In *People v. Belmontes*, the California Supreme Court explained that "[a] decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively. [¶] This does not mean that the reasons justifying full term consecutive sentencing under section 667.6, subdivision (c) must necessarily be different than those used to justify the imposition of consecutive sentences under section 1170.1." (*People v. Belmontes, supra*, 34 Cal.3d at pp. 347–348.) "What is required [in this regard] is an identification of the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c). *The crucial factor, in our view, is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)."* (*Id.* at p. 348, fn. omitted, italics added.) Here, the trial court took great pains to make a record of its reasons for selecting consecutive terms under section 667.6, subdivision (c).

The probation report recommended the trial court exercise its discretion to impose consecutive terms under section 667.6, subdivision (c), and the trial court stated, "And so as to the consecutive terms as to Counts 1 and 2, the code section that controls that is in reference to 667.6[, subdivision ](c) in determining violent sex offenses you can full-term consec them to each other." As defendant points out, the court discussed, in part, whether there were two separate acts because there was time for reflection. Although this language mirrors subdivision (d)(1) of section 667.6, the discussion occurred in the context of determining *whether* to impose consecutive sentences and the court more broadly discussed all of the facts underlying the crimes, including Bessie's age and vulnerability; her chilling screams in the Medical Guardian recording that defendant was trying to rape her; the violence of the crimes; the sophistication in targeting residences on Christmas Day, when many people were not at home; and the effect on victims of sex

17.

crimes that extends beyond the physical act.[6] Critically, rather than indicating the court believed it was *required* to impose consecutive sentences, as it would under subdivision (d)(1) of section 667.6, the record expressly reflects the court exercised *discretion* in selecting consecutive terms, concluding, "So that is the evidence that's supportive of two consecutive terms—of the two terms being run consecutive."

We disagree that the record is, at best, "arguably ambiguous" concerning whether defendant was sentenced under subdivision (c) or subdivision (d) of section 667.6, necessitating remand for resentencing. The trial court set forth a statement of its reasons for imposing consecutive terms, and this statement affirmatively reflects the court was exercising discretion to impose consecutive terms under subdivision (c) of section 667.6. Therefore, we reject defendant's claim of sentencing error under subdivision (d)(1) of section 667.6.

## DISPOSITION

On count 1, sexual penetration by force, defendant's sentence is modified to reflect an indeterminate term of 15 years to life under section 667.61, subdivision (b), of the One Strike law. In addition, defendant's convictions for burglary in count 3 and assault with intent to commit rape in count 4 are reversed as lesser included offenses of count 2, assault with intent to commit rape during a burglary. The trial court is directed

---

[6]    California Rules of Court, rule 4.426(b) provides, "A decision to impose a fully consecutive sentence under section 667.6[, subdivision ](c) is an additional sentence choice that requires a statement of reasons separate from those given for consecutive sentences, but which may repeat the same reasons. The sentencing judge is to be guided by the criteria listed in rule 4.425, which incorporates rules 4.421 and 4.423, as well as any other reasonably related criteria as provided in rule 4.408."

to issue an amended abstract of judgment to the appropriate authorities reflecting these modifications.  The judgment is otherwise affirmed.


MEEHAN, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.

19.